## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 24-40457-357 |
| **MELISSA ANN ELLISON,** | **Chapter 7** |
| Debtor. | Related to Doc. 11 |

## MEMORANDUM OPINION

The Acting United States Trustee (the "U.S. Trustee") has moved to dismiss this Chapter 7 case as abusive under 11 U.S.C. §§ 707(b)(1) and 707(b)(3), arguing that Debtor Melissa Ann Ellison has the ability to make substantial payments to her creditors (the "Motion"). I heard the Motion on June 5, 2024, and received supplemental filings.

For the reasons set forth below, I will grant the Motion. I will dismiss this case unless, within 14 days, the Debtor elects to convert the case to Chapter 13.

### I.      Factual and Procedural Background

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on February 10, 2024. She reported on Schedule I that she had monthly compensation of $3,645.12 and payroll deductions of $637.72, and that her non-filing spouse had monthly compensation of $9,735.99 and payroll deductions of $2,905.08, resulting in a combined monthly income of $9,838.31. Among the many expenses listed on the Debtor's Schedule J were a gym membership in the amount of $194.40 per month and "kids after school activities," including martial arts and violin lessons, totaling $300.00 per month. The bottom line was a monthly net income of negative $140.09.

The U.S. Trustee filed a motion to dismiss the Debtor's bankruptcy case on March 22 and amended it later that same day. As amended, the Motion makes two primary arguments: first, that the Debtor's case should be dismissed pursuant to Section 707(a) because the Debtor failed to provide documentation to the U.S. Trustee in support of certain claimed expenses, "substantially imped[ing] the United States Trustee in its analysis of this case," and second, that the case should be dismissed for abuse under Sections 707(b)(1) and 707(b)(3) because the Debtor's monthly net income, as recalculated by the U.S. Trustee, is sufficient to pay a

substantial amount of her general unsecured debts in a hypothetical 60-month Chapter 13 case.

The parties later resolved the Section 707(a) claim, which is no longer at issue.

In support of his Section 707(b) argument, the U.S. Trustee recalculated the non-filing spouse's gross monthly income and payroll deductions to be $11,155.78 and $3,418.51, respectively, based upon documentation that he had received from the Debtor, resulting in a net increase of $906.36 in the Debtor's household income. According to the U.S. Trustee, this increase in income would permit the Debtor to pay approximately $45,000 over the course of a hypothetical 60-month Chapter 13 plan, equivalent to roughly 60% of the Debtor's general unsecured debts.

The Debtor responded on April 3, denying that she could repay a substantial portion of her general unsecured debts. Several weeks later, she amended Schedule I by increasing the non-filing spouse's income to $11,155.78 and payroll deductions to $3,193.49. At the same time, she amended Schedule J by increasing her household medical and entertainment expenses and adding an additional expense for the care of the family pets, resulting in a new monthly net income shortfall of $144.71.

At a hearing on June 5, the parties announced that they had reached an agreement on all disputed matters except for the reasonableness of two expense items listed by the Debtor on Schedule J: the after-school activities for the children, totaling $300.00, and the gym membership of $194.40.

The Debtor testified at the hearing as to those expenses. She explained that the after-school activities include violin lessons for her twelve-year-old daughter and taekwondo training for the whole family of four. She testified that the violin lessons cost approximately $30.00 per month and supplement the daughter's required involvement in her school's orchestra. The taekwondo classes encompass the remainder of the $300.00 expense. The whole family participates in these self-defense trainings; they are able to take unlimited lessons each month; and the sessions help with one of the children's ADHD and focus, though the classes have not been prescribed by a physician or counselor.

The Debtor also testified that the gym membership covers the entire family, provides opportunities for care and activities for the children, and is used by her non-filing spouse, a firefighter, to maintain his physical fitness. Under cross-examination, the Debtor stated that she considered other gym and non-gym options but decided to maintain her current gym membership because, in addition to the benefits mentioned above, it provides a good option

for getting out of the house, includes classes and trainers at no extra cost, and is approximately the same cost as other gyms in the area.

At the conclusion of the hearing, I requested that the parties submit a joint stipulation of facts, encouraged them to file supplemental briefs, and took the matter under advisement.

The Debtor filed an amended Schedule J on June 25, increasing her mortgage expense, decreasing the family's medical expenses, and removing a duplicate expense for the care of the family pets, resulting in a new monthly net income of $6.29.

One day later, the parties filed a joint stipulation of facts, agreeing that the information contained on the Debtor's amended Schedule I filed on April 30 and on the amended Schedule J filed on June 25 is true and accurate, and stipulating that the Debtor's total non-priority, unsecured debt is $76,185.17.[1]

The U.S. Trustee also filed a brief in support of the Motion. In his brief, the U.S. Trustee seeks dismissal under Sections 707(b)(1) and (b)(3), arguing that "after elimination of a gym membership, martial arts lessons, and private violin lessons from Debtor's budget, Debtor would be able to make a substantial repayment to her general, unsecured creditors over a hypothetical, 60-month chapter 13 repayment plan." The U.S. Trustee included revised calculations, arguing that removal of those expenses would increase the Debtor's disposable income to $500.69 per month, allowing her to make a substantial repayment of $30,041.40, or 39%, toward her general unsecured debts over the course of a 60-month plan. Even accounting for standard Chapter 13 attorneys' fees and administrative expenses, the repayment to general, unsecured creditors would be 31%, constituting a substantial repayment.

The Debtor did not file a supplemental brief.

## II.    Analysis

Section 707(b)(1) provides that, after notice and a hearing, the court "may dismiss a case filed by an individual debtor . . . whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Section 707(b)(2) provides for a presumption of abuse if the debtor's current monthly income, reduced by certain allowed amounts and multiplied by 60, is equal to or

---

[1] The stipulation does not address whether the Debtor's expenses are reasonable or necessary. Nevertheless, it is clear from the context that the U.S. Trustee is not challenging expenses other than those discussed here.

greater than certain thresholds. *Id.* § 707(b)(2). The U.S. Trustee does not proceed under the theory of presumed abuse in this case. Rather, he relies solely upon Section 707(b)(3), which provides that:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption [of abuse] does not arise or is rebutted, the court shall consider—
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the *totality of the circumstances* (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

*Id.* § 707(b)(3) (emphasis added). Because the U.S. Trustee is proceeding under Section 707(b)(3), he bears the burden of proof to demonstrate abuse. *In re Booker*, 399 B.R. 662, 665 (Bankr. W.D. Mo. 2009).

Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005, a court could dismiss the case of an individual debtor if relief under Chapter 7 would be "a *substantial* abuse" of the Bankruptcy Code. 11 U.S.C. § 707(b) (2004) (emphasis added). At that time, the statute included a presumption in favor of the debtor. *See id*. The Eighth Circuit determined that a debtor's ability to fund a Chapter 13 plan was sufficient to establish substantial abuse. *See In re Walton*, 866 F.2d 981, 984–85 (8th Cir. 1989); *Fonder v. United States*, 974 F.2d 996, 999 (8th Cir. 1992); *In re Koch*, 109 F.3d 1285, 1286 (8th Cir. 1997). Debtors' Chapter 7 cases were often dismissed under the substantial-abuse test if they could repay more than 20% or 30% of the claims of their general unsecured creditors. *See, e.g.*, *In re Reeves*, 327 B.R. 436, 445 (Bankr. W.D. Mo. 2005) (dismissed where debtor could make 21.8% to 27.1% repayment to general unsecured creditors); *In re Regan*, 269 B.R. 693, 698 (Bankr. W.D. Mo. 2001) (same, but repayment of approximately $12,000, or 29%); *In re Praleikas*, 248 B.R. 140, 145 (Bankr. W.D. Mo. 2000) (same, but repayment of approximately $5,500, or 20%); *In re Schott*, No. 05-49765-293, 2007 WL 914043, at *4 (Bankr. E.D. Mo. Mar. 23, 2007) (same, but repayment of 35%).

Congress amended Section 707(b) in 2005 to permit dismissal upon mere "abuse," and it eliminated the presumption in favor of the debtor. Pub. L. No. 109-8, § 102(a), 119 Stat. 23, 27 (2005). It also codified the "theretofore ad hoc totality of circumstances analysis" in a new Section 707(b)(3). *In re Boatright*, 414 B.R. 526, 530 (Bankr. W.D. Mo. 2009). And "[d]espite the ostensible breadth of the analysis, . . . the case law continues to be predominated by an

examination of a debtor's ability to repay a significant portion of unsecured debt." *Id.* In assessing whether a case should be dismissed as abusive based upon the totality of a debtor's financial circumstances, courts focus primarily, "if not exclusively," upon the debtor's ability to repay general unsecured creditors. *Booker*, 399 B.R. at 667; *In re Honkomp*, 416 B.R. 647, 649 (Bankr. N.D. Iowa 2009). When calculating a debtor's ability to pay, a court should scrutinize and "make downward adjustments" to expenses to "ensure that [they] are reasonable." *In re Smith*, 447 B.R. 832, 834 (Bankr. N.D. Ohio 2011).

As with the old substantial-abuse test, Chapter 7 debtors have seen their cases dismissed for abuse when they are able to make substantial payments toward their debts. *See, e.g.*, *In re Roppo*, 442 B.R. 888, 892-93 (Bankr. N.D. Ill. 2010) (listing decisions that have dismissed Chapter 7 cases for abuse under § 707(b)(3)); *Booker*, 399 B.R. at 671 (dismissed for abuse where debtor could make $91,221.00, or 36.8%, repayment to general unsecured creditors). There is no bright-line test to determine what constitutes substantial repayment under Section 707(b)(3). *See Boatright*, 414 B.R. at 530 n.5 (noting "[t]here was no bright line test as to how much or what percentage of unsecured debt should be repaid" under the old substantial-abuse test).

There is no dispute that the Debtor's debts are primarily consumer in nature. The analysis thus turns upon whether the Debtor's expenses are unreasonable and, if those expenses were removed from her proposed budget, whether she would have sufficient disposable income to make substantial payments on her general unsecured debts under a hypothetical Chapter 13 plan.

## A.    The Reasonableness of the Contested Expenses

Courts expect that "the budgeted expenses of a debtor seeking relief under the Bankruptcy Code would reflect some belt tightening—some reduction from prepetition levels." *Reeves*, 327 B.R. at 446. This does not mean that a debtor must forgo life's necessities, but a debtor who continues to spend at pre-petition levels on luxury items or discretionary expenses puts a Chapter 7 case at risk of dismissal. *See In re Gourley*, 549 B.R. 210, 219-21 (Bankr. N.D. Iowa 2016).

Judge McDonald undertook this type of analysis in *Schott*. In that case, which arose under the substantial-abuse standard, he evaluated whether three disputed expenses were excessive or unreasonable. Looking to the definition of disposable income in Section 1325(b)(2) for guidance, he determined that the debtors' expenses of $505.00 per month in tuition for a parochial school, a "significant portion" of the debtors' life-insurance premiums, and $158.00 per month for their "children to play on elite soccer clubs and to attend soccer camps" were not reasonably necessary expenses. *Schott*, 2007 WL 914043, at *2-4. He

concluded, respectively, that they amounted to a "parental preference," were a mere "savings device," and were unnecessary for the "support or maintenance of the children." *Id.* After excluding those expenses from the debtors' budget, Judge McDonald determined that they had sufficient disposable income to fund a Chapter 13 plan that would pay 35% of general unsecured claims, and thus he granted the U.S. Trustee's motion to dismiss for substantial abuse. *Id.* at *5.

In this case, the Debtor has claimed an expense of approximately $270.00 per month for taekwondo classes for the family. I commend the Debtor for her concern for the well-being of her family, and the positive effect that taekwondo seems to have on her daughter is a relevant consideration. Nevertheless, in the context of this case, the cost of taekwondo classes is a discretionary expense that is not reasonably necessary for the Debtor or her family. *See In re Stout*, 336 B.R. 138, 143 (Bankr. N.D. Iowa 2006) (concluding that ice-skating lessons and related expenses are "an extravagance," despite debtor's sincere belief that they benefited daughter psychologically); *In re Walsh*, 287 B.R. 154, 157 (Bankr. E.D.N.C. 2002) (hockey expenditures "cannot take precedence over . . . other financial obligations"); *In re Falke*, 284 B.R. 133, 139 (Bankr. D. Or. 2002) (deducting expenses for golf lessons in substantial-abuse analysis); *Schott*, 2007 WL 914043, at *4 (deducting expenses for sports teams and camps).

The Debtor also spends $194.40 monthly for a family gym membership. A gym membership may be a necessity for some debtors. *See In re Barbutes*, 436 B.R. 518, 529 (Bankr. M.D. Tenn. 2010) (pilot); *In re Augenstein*, No. 06-13867, 2007 WL 6374910, at *7 (Bankr. N.D. Ohio 2007) (military policeman and juvenile correction facility employee). But the Debtor acknowledged that her husband has access to a workout facility at his fire station. The other benefits identified by the Debtor—general fitness, childcare, children's activities, and access to classes—are important, but they do not make the cost of the gym membership anything more than a discretionary expense for either the Debtor or her dependents. I thus conclude that the U.S. Trustee has carried his burden to demonstrate that the membership is not a reasonably necessary expense for the Debtor.

My conclusions about the Debtor's specific expenses relating to health and fitness do not mean that it would be unreasonable for the Debtor and her family to spend any amount at all in this general area. For purposes of my analysis, I will use $100.00 per month—which might approximate the cost of a more bare-bones facility or permit the Debtor to purchase items for at-home or outdoor exercise—as an appropriate expense. I will exclude the remaining $364.40 as unnecessary.

Given the analysis above, it is unnecessary for me to determine whether the $30.00 per month that the Debtor spends on her daughter's violin lessons is unreasonable or excessive. These lessons are different from the other expenses at issue: they supplement the school

curriculum and are very modestly priced. But in any event, over the course of a 60-month plan, disallowance of this expense would contribute just an additional $1,800.00, an amount that would not ultimately sway the repayment calculation in either direction.

**B.    Hypothetical Repayment**

Having found that at least $364.40 of the Debtor's included expenses are unreasonable and should be removed from her budget, I must determine whether the Debtor would have sufficient disposable income to make substantial payments to her general unsecured creditors under a hypothetical Chapter 13 plan.

The Debtor's Schedule J shows a monthly net income of $6.29. An additional $364.40 would produce a new monthly net income of $370.69. Over the course of a 60-month plan, the Debtor would be able to pay in $22,241.40. After payment of a trustee's fee of 6.6% and $4,800.00 in attorneys' fees, $15,973.46 would remain for general unsecured creditors.[2] This is equivalent to 20.9% of the Debtor's general unsecured debt.

A debtor's ability to repay 21% of general unsecured creditors' claims in a hypothetical Chapter 13 case may support dismissal for abuse under the case law, although it appears to be at the lower end of the range. *See, e.g.*, *Praleikas*, 248 B.R. at 145 (20%); *In re Alther*, 537 B.R. 262, 270 (Bankr. W.D. Va. 2015) (20%); *In re Kubatka*, 605 B.R. 339, 371 (Bankr. W.D. Pa. 2019) (27%); *In re Navin*, 548 B.R. 343, 351 (Bankr. N.D. Ga. 2016) (12% or more). But that is not the only relevant factor. The sheer amount of money that a debtor could pay to creditors in Chapter 13 must be a consideration as well. A simple thought experiment shows why. If the Debtor had only $30,000.00 in unsecured debt, her hypothetical distribution to general unsecured creditors would be more than 50%. On the other hand, if the Debtor had $500,000.00 in unsecured debt—perhaps because she injured someone in an automobile crash—the distribution would be only 3.2%. But the Debtor's Chapter 7 filing would not be inherently more abusive in the former scenario than in the latter; the only difference between the two is the amount of debt. *See Praleikas*, 288 B.R. at 145 (noting that if debtors are permitted to remain in Chapter 7 merely because their hypothetical percentage distribution would be low, "debtors would be rewarded for having more debt, rather than less").

Section 707(b)(2), though not directly at issue here, is instructive. The presumption of abuse may arise if a debtor's net income over the life of a 60-month plan is at least 25% of the amount of general unsecured claims, but it also arises if the figure exceeds $15,150.00,

---

[2] The Debtor does not have priority unsecured debt. She has three debts secured by personal property, but I assume for purposes of this analysis that they would be treated as co-debtor obligations and paid outside the plan.

regardless of the quantum of claims. *See* 11 U.S.C. § 707(b)(2)(A)(i). Income and expenses are calculated differently under Section 707(b)(2) than they are under Section 707(b)(3), and so I do not believe that a debtor's ability to pay $15,150.00 is dispositive under the totality-of-the-circumstances test of Section 707(b)(3)(B). Nevertheless, the structure of the statute demonstrates that Congress believes that at some point, a debtor's retention of money that could benefit unsecured creditors is abusive, without regard to how much money the debtor owes to those creditors.

I conclude that the Debtor in this case has reached that point. Although she is not constrained by the limits on expenses that apply under Section 707(b)(2)—indeed, the U.S. Trustee has not disputed that nearly all of her actual expenses are reasonable—she proposes to retain more than $22,000.00 for discretionary expenses over the next five years, most of which would benefit her unsecured creditors if she had filed a Chapter 13 case instead. This is a substantial amount by any measure.

## III.   Conclusion

Because there are no other circumstances in the Debtor's case compelling a different result, this case should be dismissed for abuse based upon the totality of the circumstances of the Debtor's financial situation.

I will, therefore, enter a separate order dismissing this case unless the Debtor chooses to convert the case to Chapter 13 within 14 days.

Dated:  August 5, 2024
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge